**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZEEV RAFAILOV, <br><br>                     Plaintiff, <br><br>       v. <br><br> CITIBANK, INC., et al. <br><br>                  Defendants. | CIVIL ACTION NO. 3:16-cv-04132-MAS-TJB <br><br> **Motion Return Date: November 21, 2016 <br> Oral Argument Requested if Motion is Opposed** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S
<u>MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>**

BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002
T:  856.761.3400
On the Brief:             F:  856.761.1020
Daniel JT McKenna
Christopher N. Tomlin     *Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................................. 3

III.   ARGUMENT ....................................................................................................... 5

      A.     Plaintiff's Claim Is Subject To Binding Arbitration Pursuant To The
           Arbitration Agreement Governing The Account. .................................... 5

           1.     Under The FAA, This Court Must Compel Arbitration Pursuant To
                 The Express Terms Of The Arbitration Agreement Contained In
                 The Card Agreement. ..................................................................... 5

           2.     The Arbitration Agreement Is Valid And Enforceable. ............................ 9

           3.     Plaintiff's Claim Falls Squarely Within The Arbitration
                 Agreement's Scope. ..................................................................... 11

      B.     The Action Must Be Stayed Pending Arbitration. ................................. 13

IV.    CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

Ackerberg v. Citicorp USA, Inc.,
  898 F.Supp.2d 1172 (N.D. Cal. 2012) ................................................................8, 10

Allied-Bruce Terminix Cos. v. Dobson,
  513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)....................................5

Am. Express Co. v. Italian Colors Rest.,
  133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) .........................................................2, 7

AT&T Mobility v. Concepcion,
  131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ................................................... passim

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
  475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)....................................11

AT&T Universal Card Servs. v. Mercer,
  246 F.3d 391 (5th Cir. 2001) ..............................................................................10

Barker v. Citibank (South Dakota), N.A.,
  No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003) ....................9

Buckeye Check Cashing, Inc. v. Cardegna,
  546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)...................................5

Cara's Notions, Inc. v. Hallmark Cards, Inc.,
  140 F.3d 566 (4th Cir. 1998) ..............................................................................13

Carr v. Citibank, N.A.,
  No. 15-cv-6993 (SAS), 2015 WL 9598797 (S.D.N.Y. Dec. 23, 2015) .............................8, 13

Cayanan v. Citi Holdings, Inc.,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013)..........................................................8, 10, 12

Cendant Corp. v. Forbes,
  72 F. Supp. 2d 341 (S.D.N.Y. 1999)....................................................................13

Christy v. We the People Forms & Serv. Ctrs., United States, Inc.,
  213 F.R.D. 235 (D.N.J. 2003)..............................................................................9

Citibank USA v. Howard,
  No. 4:02CV64LN, slip. op., 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002) ......................9

Clookey v. Citibank, N.A.,
  No. 8:14-cv-1318, 2015 WL 8484514 (N.D.N.Y. Dec. 9, 2015) ...............................8

Collins & Aikman Prods. Co. v. Bldg. Sys.,
    58 F.3d 16 (2d Cir. 1995)..........................................................................................11

Collins v. Burlington N. R. Co.,
    867 F.2d 542 (9th Cir. 1989) ...................................................................................13

CompuCredit Corp. v. Greenwood,
    132 S. Ct. 665, 181 L. Ed. 2d 586 (2012) ................................................................2

Conroy v. Citibank, N.A.,
    No. 10-CV-04930-SVW-AJW, 2011 WL 10503532 (C.D. Cal. Jul. 22, 2011) .......................8

Coppock v. Citigroup, Inc.,
    No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ....................8

Cronin v. Citifinancial Servs., Inc.,
    No. 08-1523, 2008 WL 2944869 (E.D. Pa. Jul. 25, 2008 ........................................7

Daugherty v. Experian Information Solutions, Inc.,
    847 F.Supp.2d 1189 (N.D. Cal. 2012) .....................................................................8

Davies v. Green Tree Servicing, LLC,
    No. 3:14-1711, 2015 WL 3795621 (M.D. Pa. June 18, 2015)..................................7

Drozdowski v. Citibank, Inc.,
    No. 2:15-cv-2786-STA-cg, 2016 U.S. Dist. LEXIS 117015 (W.D. Tenn. Aug. 31,
    2016) ...........................................................................................................8, 12, 13

Dumanis v. Citibank (South Dakota), N.A.,
    No. 6:07-cv-6070 (CJS), 2007 WL 3253975 (W.D.N.Y. Nov. 2, 2007)..................8

Eaves-Leonos v. Assurant, Inc.,
    3:07-CV-18-S, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008)..................................8, 10

Egerton v. Citibank, N.A., CVO36907DSF (PLAX), 2004 WL 1057739 (C.D. Cal. Feb.
    18, 2004) ...................................................................................................................9

Ellin v. Credit One Bank,
    No. 15-2694 (FLW), 2015 U.S. Dist. LEXIS 153533 (D.N.J. Nov. 13, 2015) .......7

Fahey v. U.S. Bank Nat'l Ass'n,
    No. 4:05CV01453 FRB, 2006 WL 2850529 (E.D. Mo. Sept. 29, 2006)................10

Fedotov v. Peter T. Roach & Assocs., P.C.,
    No. 03 Civ. 8823(CSH), 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006) .................10

First Options of Chicago, Inc. v. Kaplan,
    514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).....................................10

Fleet Tire Serv. v. Oliver Rubber Co.,
    118 F.3d 619 (8th Cir. 1997) ................................................................11

Frankel v. Citicorp Ins. Servs., Inc.,
    No. 11-cv-2293 (NGG)(RER), 2014 WL 10518555 (E.D.N.Y. Aug. 12, 2014)......................8

Gay v. CreditInform,
    511 F.3d 369 (3d Cir. 2007)..............................................................7, 9

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)........................................................................12

GMC v. New A.C. Chevrolet,
    263 F.3d 296 (3d Cir. 2001)................................................................9

Green Tree Fin. Corp.-Ala. v. Randolph,
    531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)............................................7

Guerrero v. Equifax Credit Info. Servs., Inc.,
    No. CV 11-6555 PSG, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) ....................................8

Ingram v. Citicorp Credit Servs., Inc. (USA),
    No. 05-2095 B/An, slip op., 2005 WL 6518077 (W.D. Tenn. July 11, 2005...........................9

KPMG LLP v. Cocchi,
    132 S. Ct. 23, 181 L. Ed. 2d 323 (2011) ..............................................2, 6

Lowman v. Citibank (South Dakota), N.A.,
    CV-05 -8097 RGK, 2006 WL 6108680 (C.D. Cal. Mar. 24, 2006) ........................................9

Marmet Health Care Ctr., Inc. v. Brown,
    132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) ................................................2

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)..........................................6

McCormick v. Citibank, N.A.,
    No. 15-CV-46-JTC, 2016 WL 107911 (W.D.N.Y. Jan. 8, 2016)..............................................8

McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.,
    858 F.2d 825 (2d Cir. 1988)..............................................................11

McGilley v. Sterling Jewelers, Inc.,
    No. 12-5217, 2013 U.S. Dist. LEXIS 37400 (D.N.J. Mar. 18, 2013)......................................9

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)....................................2, 12

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
   460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)............................................5, 6

Orman v. Citigroup, Inc.,
   2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012).........................................................8

Perry v. Thomas,
   482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)..........................................6

Preston v. Ferrer,
   552 U.S. 346, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)..........................................8

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
   388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)..........................................5

Pro Tech Indus., Inc. v. URS Corp.,
   377 F.3d 868 (8th Cir. 2004) ...................................................................................7

Schiano v. MBNA,
   No. 05-1771 (JLL), 2012 U.S. Dist. LEXIS 132208 (D.N.J. Aug. 14, 2012) ..........9

Sesto v. Nat'l Fin. Sys., Inc.,
   Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005)..........................9

Shearson/Am. Express, Inc. v. McMahon,
   482 U.S. 220 (1987)................................................................................................12

Shetiwy v. Midland Credit Mgmt.,
   959 F. Supp. 2d 469 (S.D.N.Y. 2013).......................................................................8

Southland Corp. v. Keating,
   465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)...................................................8

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,
   559 U.S. 662, 130 S. Ct. 1758, 1774 L. Ed. 2d 605 (2010)...............................2, 6, 8

Tantillo v. Citifinancial Retail Servs.,
   No. 12-511 (MLC), 2013 U.S. Dist. LEXIS 21832 (D.N.J. Feb. 19, 2013)..............7

Taylor v. Citibank USA, N.A.,
   292 F. Supp. 2d 1333 (M.D. Ala. 2003) ...................................................................9

Tractenberg v. Citigroup Inc.,
   No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011).........................8

Trippe Mfg. Co. v. Niles Audio Corp.,
   401 F.3d 529 (3d Cir. 2005)......................................................................................7

<u>Ventura v. 1st Fin'l Bank</u>,
    No. C 03-4515 JF, 2005 WL 2406029 (N.D. Cal. Sept. 29, 2005)..........................................10

<u>Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>,
    489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ........................................................6

**STATE CASES**

<u>Rossi Fine Jewelers, Inc. v. Gunderson</u>,
    648 N.W.2d 812, 2002 SD 82 (S.D. 2002) ...........................................................................11

**FEDERAL STATUTES**

9 U.S.C. § 1, <u>et seq.</u>................................................................................................ passim

47 U.S.C. § 227, <u>et seq.</u>.................................................................................................1

**STATE STATUTES**

S.D. Codified Laws § 54-11-9 ......................................................................................10

**OTHER AUTHORITIES**

E.D.N.Y. Oct. 14, 2015....................................................................................................8

## I.     INTRODUCTION

In this case, plaintiff Zeev Rafailov ("Plaintiff") asserts a claim against defendant Citibank, N.A. ("Citibank") for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., arising from allegations that, in February 2016, Citibank auto-dialed Plaintiff on his cell phone, including the number 843-957-0583, without his consent.  Notably, however, Plaintiff is the holder of a Citibank-issued Home Depot credit card and provided the 843-957-0583 number to Citibank when he opened the account in April 2016.  As a result, and regardless of its merit (or lack thereof), Plaintiff's claim must be arbitrated on an individual basis pursuant to the binding arbitration agreement (the "Arbitration Agreement") between Plaintiff and Citibank contained in the Card Agreement governing Plaintiff's credit card account. Accordingly, as set forth in detail below, given the parties' Arbitration Agreement, this dispute is subject to arbitration.

The Arbitration Agreement is valid and enforceable under South Dakota law (which applies here pursuant to the choice-of-law provision in the underlying Card Agreement) and encompasses Plaintiff's claim.  By its terms, the Arbitration Agreement in the Card Agreement broadly encompasses "any claim, dispute, or controversy" between Plaintiff and Citibank "arising from or relating to" Plaintiff's relationship with Citibank, which certainly includes whether Citibank had consent to call Plaintiff's cellular telephone number.  Moreover, the Arbitration Agreement explicitly advises that it must be enforced pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. ("FAA").  Importantly, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration.

Over the last several years, the United States Supreme Court has issued a series of decisions confirming that the FAA, which unquestionably applies here, "reflects an 'emphatic

federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the

FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2]

Indeed, the decision in AT&T Mobility v. Concepcion, 131 S. Ct. at 1744, makes absolutely

clear that arbitration agreements must be enforced as written.  The FAA strongly favors the

validity and enforceability of arbitration agreements and, except in limited circumstances not

present here, such agreements must be enforced according to their express terms in both federal

and state courts, and regardless of whether the claims asserted arise under federal or state law.

See, e.g., Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013);

Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012);

CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012).

       Here, the Arbitration Agreement expressly requires that any claims relating to the

account or the parties' relationship be arbitrated, even if the facts underlying the claim predate

the parties' relationship.  Plaintiff's singular claim – that Citibank called his cell phone in

violation of the TCPA – clearly relates to and arises from his relationship with Citibank.  Thus,

the claim falls within the Arbitration Agreement's broad scope.  Courts nationwide repeatedly

have granted motions to compel arbitration by Citibank based on its Arbitration Agreement.

---

[1]    KPMG LLP v. Cocchi, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

[2]    AT&T Mobility v. Concepcion, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011) (citations omitted); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 683, 130 S. Ct. 1758, 1774 L. Ed. 2d 605 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted).

Accordingly, the motion should be granted, and this dispute submitted to arbitration pursuant to the parties' Arbitration Agreement.  In addition, this action must be stayed pursuant to Section 3 of the FAA pending completion of the arbitration.

## II.     FACTUAL BACKGROUND

In his Complaint, Plaintiff asserts that Citibank made calls to Plaintiff's cellular telephone using an auto-dialer without his consent.  However, as noted above, Plaintiff is the holder of a Citibank-issued Home Depot credit card account currently ending in 8732 (the "Account").  Plaintiff filled out an application and provided Citibank with his primary telephone number (843-957-0583), among other things, at the time he applied for the Account in April 2016.  (Grayot Decl., ¶ 6.)  This is the same phone number listed in the Plaintiff's Complaint.

The Account is subject to an Arbitration Agreement that is contained in the written terms and conditions reflected in a Card Agreement, as amended from time to time.  (Id., ¶¶ 5, 7.)  The Card Agreement includes, among other terms, choice-of-law provisions calling for the application of federal and South Dakota law.  (Id., Ex. 2.)  It also includes an Arbitration Agreement providing that either party can elect mandatory binding arbitration:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.***
>
> **Agreement to Arbitrate:**  Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> ***Claims Covered***

**What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.  Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?**  Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest Interpretation.**  Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.  This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

       *       *       *

(Grayot Decl., Ex. 2 (emphasis in original).)

The Card Agreement also includes terms:  (i) excluding small claims court actions; (ii) authorizing the arbitration hearing to proceed at a location convenient to the cardholder; and (iii) allowing for the payment of Plaintiff's arbitration fees in certain cases.

(Id.)

### III.    ARGUMENT

#### A.    Plaintiff's Claim Is Subject To Binding Arbitration Pursuant To The Arbitration Agreement Governing The Account.

##### 1.    Under The FAA, This Court Must Compel Arbitration Pursuant To The Express Terms Of The Arbitration Agreement Contained In The Card Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").[3]  As the Supreme Court recently confirmed, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  AT&T Mobility, 131 S. Ct. at 1745 (citations omitted).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct.

---

[3]    The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).  Here, there is no question that the FAA applies to this dispute because the Account was opened, and used, by Plaintiff, who resides in Lakewood, New Jersey (see Compl., ¶ 2), and Citibank, is a national banking association located in South Dakota.  (E.g., Grayot Decl., ¶ 1.)  Indeed, the Arbitration Agreement explicitly states that it is "governed by the [FAA]."  (Id., Ex. 2.)

927, 74 L. Ed. 2d 765 (1983); see also Perry v. Thomas, 482 U.S. 483, 490, 107 S. Ct. 2520, 96

L. Ed. 2d 426 (1987) (stating that arbitration agreements falling within the scope of the FAA

"must be 'rigorously enforce[d]'" (citations omitted)).  "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460

U.S. at 24-25; see also Perry, 482 U.S. at 490 (stating that arbitration agreements falling within

the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted).  Indeed, in the last

two years, the United States Supreme Court has consistently confirmed that the FAA "requires

courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts shall direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed." KPMG,

132 S. Ct. at 25-26 (per curiam) (citations omitted; emphasis in original); see also AT&T

Mobility, 131 S. Ct. at 1748 (confirming that the "'principal purpose' of the FAA is to 'ensur[e]

that private arbitration agreements are enforced according to their terms.'"); accord Stolt-

Nielsen, 559 U.S. at 682; Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,

489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); Mastrobuono v. Shearson Lehman

Hutton, Inc., 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

   As confirmed by the Supreme Court, the "overarching purpose of the FAA,

evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements

according to their terms so as to facilitate streamlined proceedings." AT&T Mobility, 131 S. Ct.

at 1748.  By consenting to bilateral arbitration, the "parties forgo the procedural rigor and

appellate review of the courts in order to realize the benefits of private dispute resolution:  lower

costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve

specialized disputes." Stolt-Nielsen, 559 U.S. at 685 (citations omitted).  In fact, the Supreme

Court recently reaffirmed the broad holding of its prior, seminal decision in AT&T Mobility. Very simply, under the FAA, arbitration agreements must be enforced as written and "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."  Italian Colors, 133 S. Ct. at 2312, n.5.  Moreover, it is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

Under the FAA, arbitration should be compelled where, as here:  (1) "a valid agreement to arbitrate exists"; and (2) "the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citations omitted); Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).  Numerous courts in the Third Circuit and this district have enforced arbitration agreements in consumer financial transactions.  See, e.g., Gay v. CreditInform, 511 F.3d 369, 395 (3d Cir. 2007); Tantillo v. Citifinancial Retail Servs., No. 12-511 (MLC), 2013 U.S. Dist. LEXIS 21832, at *2 (D.N.J. Feb. 19, 2013); Davies v. Green Tree Servicing, LLC, No. 3:14-1711, 2015 WL 3795621, at *10 (M.D. Pa. June 18, 2015); Cronin v. Citifinancial Servs., Inc., No. 08-1523, 2008 WL 2944869, at *3-4 (E.D. Pa. Jul. 25, 2008), aff'd, 352 Fed. App'x 630, 636 (3d Cir. Sept. 9, 2009); Ellin v. Credit One Bank, No. 15-2694 (FLW), 2015 U.S. Dist. LEXIS 153533, at *8 (D.N.J. Nov. 13, 2015) (finding that plaintiff "clearly was on notice of the Agreement's arbitration clause, and that Plaintiff signified his acceptance to the Agreement's terms by making purchases on his credit card").[4]

---

[4]    The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. See AT&T Mobility, 131 S. Ct. at 1752-53 (states may not superimpose judicial

Recognizing these principles, numerous courts across the country have enforced the same Citibank Card Agreement at issue here including as recently as two months ago.  See, e.g., Drozdowski v. Citibank, Inc., No. 2:15-cv-2786-STA-cg, 2016 U.S. Dist. LEXIS 117015, at *26-*27 (W.D. Tenn. Aug. 31, 2016); McCormick v. Citibank, N.A., No. 15-CV-46-JTC, 2016 WL 107911, at *6 (W.D.N.Y. Jan. 8, 2016); Carr v. Citibank, N.A., No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); Clookey v. Citibank, N.A., No. 8:14-cv-1318, 2015 WL 8484514, at *5 (N.D.N.Y. Dec. 9, 2015); Frankel v. Citicorp Ins. Servs., Inc., No. 11-cv-2293 (NGG)(RER), 2014 WL 10518555, at *10 (E.D.N.Y. Aug. 12, 2014),  mag. recomm. adopted at 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015); Shetiwy v. Midland Credit Mgmt., 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013); Orman v. Citigroup, Inc., 2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012); Dumanis v. Citibank (South Dakota), N.A., No. 6:07-cv-6070 (CJS), 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1198-99 (S.D. Cal. 2013); Coppock v. Citigroup, Inc., No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); Tractenberg v. Citigroup Inc., No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); Ackerberg v. Citicorp USA, Inc., 898 F.Supp.2d 1172 (N.D. Cal. 2012); Guerrero v. Equifax Credit Info. Servs., Inc., No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); Conroy v. Citibank, N.A., No. 10-CV-04930-SVW-AJW, 2011 WL 10503532, at *4-5 (C.D. Cal. Jul. 22, 2011); Daugherty v. Experian Information Solutions, Inc., 847 F.Supp.2d 1189 (N.D. Cal. 2012); Eaves-Leonos v. Assurant, Inc., 3:07-CV-

---

procedures on arbitration); id. at 1747 n.7, 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA.") (citing Preston v. Ferrer, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)); Stolt-Nielsen, 559 U.S. at 683 ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); see also Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (striking down California law that sought to insulate certain issues from arbitration).

18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008); <u>Taylor v. Citibank USA, N.A.</u>, 292 F.

Supp. 2d 1333 (M.D. Ala. 2003); <u>Ingram v. Citicorp Credit Servs., Inc. (USA)</u>, No. 05-2095

B/An, slip op., 2005 WL 6518077 (W.D. Tenn. July 11, 2005), <u>mag. recomm. adopted</u> at 2005

WL 6518076 (W.D. Tenn. Aug. 25, 2005); <u>Citibank USA v. Howard</u>, No. 4:02CV64LN, slip.

op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); <u>Sesto v. Nat'l Fin. Sys., Inc.</u>, Case No.

04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); <u>Barker v. Citibank (South Dakota),</u>

<u>N.A.</u>, No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003); <u>Lowman v.</u>

<u>Citibank (South Dakota), N.A.</u>, CV-05 -8097 RGK, 2006 WL 6108680, *3-4 (C.D. Cal. Mar. 24,

2006); <u>Egerton v. Citibank, N.A.</u>, CVO36907DSF (PLAX), 2004 WL 1057739, *2 (C.D. Cal.

Feb. 18, 2004).  The same conclusion should be reached here.

### 2.    The Arbitration Agreement Is Valid And Enforceable.

The Card Agreement, which contains the applicable Arbitration Agreement, is

expressly governed by a South Dakota choice-of-law provision.[5]  (Grayot Decl., Ex. 2.)  While

the FAA exclusively governs the enforceability of the Arbitration Agreement according to its

---

[5]    Irrespective of the fact that this case is before the Court under federal question
jurisdiction, New Jersey's choice-of-law rules govern.  <u>See</u> <u>Gay v. CreditInform</u>, 511
F.3d 369, 389 (3d Cir. 2007); <u>see also</u> <u>McGilley v. Sterling Jewelers, Inc.</u>, No. 12-5217
(JBS-KMW), 2013 U.S. Dist. LEXIS 37400, at *8 (D.N.J. Mar. 18, 2013) (noting that
"federal jurisprudence honors contractual choice-of-law provisions, including choice-of-
law provisions in arbitration agreements").  "New Jersey gives effect to contracting
parties' private choice of law clauses unless they conflict with New Jersey public policy,"
<u>GMC v. New A.C. Chevrolet</u>, 263 F.3d 296, 331 n. 21 (3d Cir. 2001), or "the chosen
state has no substantial relationship to the parties or the transaction," <u>Christy v. We the</u>
<u>People Forms & Serv. Ctrs., United States, Inc.</u>, 213 F.R.D. 235, 239 (D.N.J. 2003).
Here, the South Dakota choice-of-law provision is enforceable because:  (i) South Dakota
has a substantial relationship to the parties and the transaction (i.e., Citibank is located in
South Dakota); and (ii) South Dakota law is not contrary to any fundamental public
policy of New Jersey.  <u>See</u> <u>Schiano v. MBNA</u>, No. 05-1771 (JLL), 2012 U.S. Dist.
LEXIS 132208, at *31-*32 (D.N.J. Aug. 14, 2012) (applying chosen Delaware law
granting defendant's motion to compel arbitration).

terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.  See Cayanan, 928 F. Supp. 2d at 1193-94 (holding that South Dakota law applied under Citibank's choice of law provision and applicable choice of law test); Ackerberg, 898 F. Supp. 2d at 1176-77 (same); accord First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Here, the transaction details for the Account reflects and confirms Plaintiff's use of the Account.  (Grayot Decl., ¶ 8 & Ex. 3.)  Under South Dakota law, and as confirmed by numerous district courts, Plaintiff's use of the Account constitutes his acceptance of the terms of the Card Agreement, including the Arbitration Agreement.  See S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); Cayanan, 928 F. Supp. 2d at 1199 (holding that under South Dakota law "continued use of a credit [card] account" constitutes assent to arbitration); Ventura v. 1st Fin'l Bank, No. C 03-4515 JF, 2005 WL 2406029, at *5 (N.D. Cal. Sept. 29, 2005) (noting that S.D.C.L. § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card"); Fedotov v. Peter T. Roach & Assocs., P.C., No. 03 Civ. 8823(CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (under South Dakota law, plaintiff was bound by using cards after receiving card agreements).[6]

---

[6]     Accord AT&T Universal Card Servs. v. Mercer, 246 F.3d 391, 406 (5th Cir. 2001); Fahey v. U.S. Bank Nat'l Ass'n, No. 4:05CV01453 FRB, 2006 WL 2850529, at *2 (E.D. Mo. Sept. 29, 2006) ("use of the cards amounts to acceptance of the terms of the cardholder agreements"); Eaves-Leonos v. Assurant, Inc., No. 3:07-cv-18-S, 2008 WL 80173, at *6 (W.D. Ky. Jan. 10, 2008).

South Dakota law, like federal law, strongly endorses arbitration.  "If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." Rossi Fine Jewelers, Inc. v. Gunderson, 648 N.W.2d 812, 814, 2002 SD 82 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration . . . .  There is an overriding policy favoring arbitration when a contract provides for it.").

Accordingly, under both the FAA and governing South Dakota law, the Arbitration Agreement is binding on Plaintiff and should be enforced.

### 3.   Plaintiff's Claim Falls Squarely Within The Arbitration Agreement's Scope.

Once it is determined that the parties have entered into a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes).  Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"  AT&T Tech., 475 U.S. at 650; accord Fleet Tire Serv. v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997); Collins & Aikman Prods. Co. v. Bldg. Sys., 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

Here, the Arbitration Agreement extends to "*any claim, dispute or controversy between you and us*," including "[a]ll Claims relating to your account, a prior related account, or *our relationship*." (Grayot Decl., Ex. 2 (emphasis added) (under the heading "**Claims Covered**"). The Agreement also clearly covers statutory claims, including Plaintiff's claim under the TCPA. (Id. (encompassing "Claims based on … statutory or regulatory provisions, or any other sources of law…")). In this regard, "[i]t is by now clear that statutory claims may be the subject of an arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Mitsubishi Motors, 473 U.S. at 628 (noting that, in agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum"). The "duty [of the courts] to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Indeed, numerous courts have found TCPA claims to be arbitrable. See Cayanan, 928 F. Supp. 2d at 1198-99 (citing numerous cases). Based on the foregoing, the motion should be granted.

It is of no moment that the calls at issue allegedly were made in an attempt to contact a third party (in fact, Plaintiff's cousin). See Compl. ¶ 7. Rather, the issue presented is whether Citibank violated the TCPA in calling Plaintiff's phone number – the very same phone number that Plaintiff provided to Citibank. The court in Drozdowski, supra, 2016 U.S. Dist. LEXIS 117015, addressed this issue. There, the plaintiff argued that her claim fell outside the scope of the arbitration agreement because the calls in question related to her husband's account and not her own, separate account. Id. at *20-*21. The court rejected this argument, reasoning that the plaintiff's claim unquestionably related to the parties' "relationship," bringing it within the scope of the arbitration agreement notwithstanding the fact that the specific calls at issue

concerned a different account.  Id. at *22.  Accord Cara's Notions, Inc. v. Hallmark Cards, Inc.,

140 F.3d 566, 571 (4th Cir. 1998) (finding that a broad arbitration clause covering "[a]ny

controversy or claim" relating to "any aspects of the relationship" applied to all conflicts between

the parties, regardless of whether the conflict related to the specific contract containing the

arbitration provision); Carr, supra, 2015 WL 9598797 at *3 ("The Card Agreement contemplates

the arbitration of any claim related to the parties' relationship, and the existence of consent to

contact the plaintiff via telephone undeniably implicates the parties' relationship with each

other.").

      Accordingly, because the Arbitration Agreement is valid and enforceable, and

because Plaintiff's claim is encompassed by the Agreement, the motion should be granted and

this dispute compelled to arbitration.

      **B.**    **The Action Must Be Stayed Pending Arbitration.**

      Section 3 of the FAA expressly provides that, where a valid arbitration agreement

requires a dispute to be submitted to binding arbitration, the district court shall stay the action

"until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. §

3; see Collins v. Burlington N. R. Co., 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where

district court failed to consider whether a stay was appropriate as a result of binding arbitration

agreement); see also Cendant Corp. v. Forbes, 72 F. Supp. 2d 341, 342 (S.D.N.Y. 1999)

(granting a stay under Section 3 of the FAA is "mandatory if an issue in the case is referable to

arbitration.").  Accordingly, Citibank respectfully requests that this Court stay the action against

Citibank pending completion of arbitration pursuant to the express terms of the Arbitration

Agreement.

## IV.    CONCLUSION

For the foregoing reasons, Citibank respectfully requests that the Court grant this motion and compel arbitration of Plaintiff's claim pursuant to the Arbitration Agreement governing Plaintiff's Account.  In addition, this Court should stay this action pending completion of arbitration proceedings.

Respectfully submitted,


DATED:  October 25, 2016                  /s/ Christopher N. Tomlin_____
                                          Daniel JT McKenna, Esquire
                                          mckennad@ballardspahr.com
                                          Christopher N. Tomlin, Esquire
                                          tomlinc@ballardspahr.com
                                          BALLARD SPAHR LLP
                                          210 Lake Drive East, Suite 200
                                          Cherry Hill, NJ  08002
                                          T: 856.761.3400
                                          F: 856.761.1020

                                          *Attorneys for Defendant*